# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE V. FULLER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-0633 |
| | § | |
| HARRIS COUNTY SHERIFF DEPARTMENT, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

George V. Fuller, a former inmate of the Harris County Jail in Harris County, Texas, filed this *pro se* complaint under 42 U.S.C. § 1983 against the Harris County Sheriff Department for violations of his Eighth Amendment rights. The initial dismissal of this case for failure to state a claim was reversed by the Fifth Circuit Court of Appeals. *Fuller v. Harris County*, No. 04-20343 (5th Cir. 2005). The subsequent dismissal this case for failure to prosecute also was reversed by the Fifth Circuit Court of Appeals. *Fuller v. Harris County*, No. 06-20353 (5th Cir. 2006). In the interim, the case was reassigned to the undersigned. (Docket Entry No. 62.)

The following motions are pending before the Court:

(1)     Plaintiff's motions for summary judgment (Docket Entries No. 41, 86, 87);

(2)     Defendant's motions for summary judgment (Docket Entries No. 52, 91); and

(3)     Plaintiff's motions to supplement (Docket Entries No. 43, 83, 85).

1

Both parties filed responses and replies to the various motions.  (Docket Entries No. 45, 48, 53, 79, 80, 90.)  Based on the pleadings, the motions, the responses and replies, the record, and the applicable law, the Court will grant the motions to supplement, grant defendant's motions for summary judgment, deny plaintiff's motions for summary judgment, and dismiss this case with prejudice for the reasons that follow.

*Factual Background and Claims*

Plaintiff injured his knee during a recreational basketball game at the Harris County Jail on July 25, 2003.  Jail infirmary staff examined him and diagnosed a dislocated kneecap. He was transferred to LBJ Hospital for further evaluation.  (Docket Entry No. 44, p. 8.) Hospital orthopedists confirmed the diagnosis, and recommended Motrin, crutches, and a knee immobilizer.  Plaintiff was returned to the jail and given pain medication, crutches, and a knee immobilizer.  A notation of "ortho clinic 7/31 12 noon" appears in plaintiff's jail medical records.  (*Id.*, p. 9.)  It is undisputed that plaintiff did not go to the hospital orthopedic clinic on July 31, 2003.

The jail records show that on August 2, 2003, plaintiff requested to see a physician for his knee, and that a doctor's appointment was scheduled for August 4, 2003.  (*Id.*, p. 17.) On August 3, 2003, plaintiff requested a follow-up appointment to LBJ Hospital.  A jail nurse noted that plaintiff "was to go 7/31 but doesn't know why he didn't.  Will have Linda Parker [call for follow-up.]  Cont[inue] to wear brace to (R) knee.  No swelling/discoloration noted."  (*Id.*, p. 14.)  Plaintiff's medical chart reflects that on August 10, 2003, he submitted

a sick call request for an LBJ Hospital appointment, and that a medical appointment was scheduled for August 15, 2003.

Plaintiff was seen by a jail physician on August 15, 2003. (*Id*., pp. 17-18.) The physician noted a large fluid-filled swelling on plaintiff's right knee, and requested an orthopedic consultation for "within 1 week." (*Id*., p. 20.) On August 19, 2003, plaintiff was admitted to day surgery at LBJ Hospital for reconstructive knee surgery. The surgery went well, and plaintiff was discharged the next day with instructions for an orthopedic follow-up in ten to fourteen days. (*Id*., p. 23.) Upon his return to jail, plaintiff was examined by medical staff and given pain medications. A chart note reflects that on August 27, 2003, jail medical staff observed mild swelling, erythema, and warmth on plaintiff's right knee, without fluid or other discharge. His surgical staples and incision were observed to be dry, intact, clean, and without discharge. Plaintiff's post-surgical pain was reported as well-controlled, and his request for a pain medication refill was approved on September 1, 2003.

On September 3, 2003, plaintiff asked jail officials for the date of his next orthopedic evaluation. (*Id*., p. 24.) Plaintiff's infirmary record for September 4, 2003 reflects the notation "needs ortho F/U ASAP," and that an orthopedic appointment was scheduled for September 8, 2003. (*Id*., p. 26.) On September 5, 2003, an entry was made in plaintiff's jail chart that an incision staple was breaking into his skin, with "white pus" and "mild erythema." Jail medical staff gave him oral antibiotics, morphine, and daily dressing changes, and noted his September 8th hospital appointment for orthopedic evaluation and

3

staple removal.  On September 7, 2003, plaintiff complained of severe pain and drainage from the incision, and jail medical staff observed that the knee was warm, red, and hard.  A jail physician noted a slight purulent discharge, mild swelling, and warmth.  He diagnosed cellulitis and gave plaintiff intramuscular antibiotics.  (*Id*., p. 27.)

At his September 8th orthopedic clinic follow-up the next day, plaintiff was readmitted to LBJ Hospital for what became a twelve-day stay.  His hospital operative reports summarize the course of his treatment, commencing with the following relevant portions of a report dated September 12, 2003:

> The patient is a 50-year old black male who was operated on approximately three weeks ago at LBJ Hospital by the Orthopedic Surgery Service for repair and reconstruction of a right patellar tendon rupture.  He was sent back to the jail on postoperative day 1 with a clean wound, instructions on how to weightbear only in the knee immobilizer, and told to follow up in approximately 10-14 days.  Prior to discharge, this appointment was set up.  For whatever reason, he was not brought over from the jail within two weeks of his operation.  He presented approximately three weeks after his operation with the following history.

> The patient states that he had a three to four day history of purulent drainage from his wound which was being treated at the jail with strong oral antibiotics.  He states that the pain had not gotten any better and that the condition appeared to be worsening.  When the patient did finally come to our clinic I saw him personally and there was a massive amount of purulence coming from his wound as well as significant cellulitis, erythema, and induration traveling up to the mid portion of his right thigh.  At this point I recognized the immediate need for irrigation and debridement.  The patient was admitted to the hospital and taken to the operating room as quickly as possible for this operation.

> Intraoperative findings included approximately 100-150cc of purulent material being expressed from the tissues directly overlying the patella and patellar tendon.  Upon further dissection there was purulence within the mid to distal

4

> portion of the thigh within the subcutaneous tissues, fascial tissues and muscle. This was meticulously debrided and copiously irrigated.  At this point the patient's wound was packed, partially closed so as to allow for drainage.
>
> Within 48-72 hours the patient was taken back to the operating room for repeat irrigation and debridement, and possible wound closure.

(*Id.*, pp. 29-30.)  At that point on September 13, 2003, surgeons determined that due to the extensive infection, amputation of plaintiff's leg above the knee was necessary.  The leg was amputated, and plaintiff was discharged from the hospital a week later with instructions to return for follow-up and a prosthesis fitting.  (*Id.*, pp. 32-33.)  Plaintiff claims that defendant violated his Eighth Amendment rights by delaying medical care and ignoring the hospital's follow-up orders, resulting in the loss of his leg.  He seeks $7 million in compensatory and punitive damages for defendant's deliberate indifference to his serious medical needs.

### Motions to Supplement

Plaintiff's motions to supplement his motion for summary judgment (Docket Entries No. 43, 83, 85) are GRANTED.  The Court will review and consider the supplemental documents submitted by plaintiff.

### Motions for Summary Judgment

#### Standard of review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  FED. R. CIV. P. 56(C).  A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court may not weigh the evidence or make credibility determinations.  *Id*.  Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion.  *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

*Plaintiff's motion*

In his primary[1] motion for summary judgment (Docket Entry No. 41), plaintiff claims that defendant "denied, delayed and interfered with plaintiff's prescribed treatment before and after surgery," resulting in the loss of his leg.  (*Id*., p. 2.)  He further claims that he was injured by defendant's policy and custom of confining injured inmates at the county hospital then ignoring the hospital's recommended treatments.  (*Id.*)  Plaintiff argues that defendant's actions constitute deliberate indifference to his serious medical needs.

In specific terms, plaintiff asserts that defendant was deliberately indifferent in failing to return him to the orthopedic clinic on July 31, 2003 for surgery as ordered by hospital orthopedists, and in delaying his post-surgery follow-up in September.  (*Id*., p. 5.)  He claims

---

[1]Plaintiff's subsequent motions for summary judgment (Docket Entries No. 44, 86, 87) reurge and supplement the primary motion with additional documents.

that because of these delays, his leg became infected and required emergency surgery and amputation.  (*Id*., p. 7.)

In its response to plaintiff's motion, defendant Harris County Sheriff Department contends that there is no probative summary judgment evidence that any delay between plaintiff's diagnosis of a dislocated kneecap and his reconstructive surgery was due to the Department's actual awareness of, and a disregard that its actions gave rise to, an excessive risk to plaintiff's health.  *See Farmer v. Brennan*, 511 U.S. 825, 827 (1994).  Defendant further contends that there is no evidence that any delay in medical care caused the loss of plaintiff's leg.  *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).  Defendant argues that because it is a governmental agency, it cannot be held liable for acts of its non-policymaking employees under a theory of *respondeat superior*, and can only be held liable for the execution of a department policy or custom that deprived plaintiff of his constitutional or federal rights.  (Docket Entry No. 45, p. 4.)  Defendant argues that plaintiff fails to establish a direct causal link between any Department policy or custom and his alleged constitutional deprivation, or to show that defendant consciously enacted a policy reflecting deliberate indifference to the constitutional rights of county inmates.  (*Id.*, p. 6.)

*Defendant's motion*

In its own primary[2] motion for summary judgment, defendant avers that missing the orthopedic clinic appointment on July 31, 2003 caused plaintiff no harm; that medical providers who subsequently examined him on August 3, 2003 observed no swelling, discoloration of his knee, or any other emergent problem; and that the medical care plaintiff received in jail during August and September, 2003 refutes plaintiff's claims of deliberate indifference.  Defendant further contends that it had no control over the hospital's surgery scheduling.  Defendant construes plaintiff's case as involving an "episodic act or omission," not "jail conditions," and argues that he establishes neither subjective deliberate indifference nor a policy or custom adopted or maintained with objective deliberate indifference to his serious medical needs.  Defendant moves for summary judgment as a matter of law for plaintiff's failure to establish an Eighth Amendment violation.

*Analysis*

Plaintiff's underlying legal argument – that he had an Eighth Amendment right to receive the medical treatment recommended by LBJ Hospital – is faulty.  As a result, his claim  – that defendant violated his Eighth Amendment rights by ignoring or delaying those treatment recommendations – must fail.  The Fifth Circuit recognizes that a medical care provider's failure or refusal to follow another medical care provider's treatment

---

[2]Defendant's subsequent motion for summary judgment (Docket Entries No. 91) reurges the primary motion.

recommendations does not, standing alone, constitute an Eighth Amendment violation. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also McCarty v. Zapata County*, No. 05-41718, 2007 WL 1191019, *2 (5th Cir. 2007) ("[Plaintiff's] allegations established, at best, that the defendants failed to follow the course of treatment that was recommended by the physician who saw him in the hospital.  This is insufficient to establish deliberate indifference.").  The Court declines to accept plaintiff's assertion that the hospital's recommendations are the yardstick by which the constitutionality of defendant's actions are to be measured.  This Court will look not to whether defendant carried out the hospital's treatment plans, but rather, whether defendant was deliberately indifferent to plaintiff's serious medical needs.

Plaintiff's pleadings raise an "episodic act or omission" claim under the Eighth Amendment.  To prevail, plaintiff must establish that jail officials acted with subjective deliberate indifference to his serious medical needs.  *See Flores v. County of Hardeman, Texas*, 124 F.3d 736, 738 (5th Cir. 1997).  To succeed in holding defendant accountable for such a violation, plaintiff must establish that the violation resulted from a policy or custom adopted or maintained by defendant with objective deliberate indifference.  *Id*.

To establish the requisite deliberate indifference, plaintiff must show that jail officials had subjective knowledge of a substantial risk to his health, and that they responded with deliberate indifference to that risk.  *See Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 394 (5th Cir. 2000).  That is, plaintiff must present evidence that jail officials refused

9

to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his serious medical needs. *See Domino*, 239 F .3d at 756.  Deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  It is not sufficient that jail officials should have known of a substantial risk; they must have actual knowledge of the risk and ignore it. In sum, plaintiff must prove that jail officials knew of and disregarded an excessive risk of injury to him, and that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference.  *Id*. at 837.

For those reasons, evidence of unsuccessful medical treatment, negligence, neglect, or even malpractice is insufficient to demonstrate deliberate indifference.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action.").

In the instant case, plaintiff alleges two episodes of deliberate indifference to his serious medical needs: the denial of his surgery scheduled for July 31, 2003 (Docket Entry

No. 53, p. 2; No. 41, p. 5), and defendant's five-day delay in returning him to the hospital for post-surgery follow-up in September (*id*., p. 6). Plaintiff's factual allegation underlying the former claim is unsupported by his medical records. The records clearly evince that plaintiff was scheduled for a *follow-up* at the hospital's orthopedic clinic on July 31, 2003; there is no probative evidence that *surgery* was scheduled for that day.

Nevertheless, given a liberal construction, this allegations also raises a claim for delayed medical care in failing to return plaintiff to the hospital orthopedic clinic on July 31, 2003. Although defendant offers no explanation for why the follow-up appointment was not kept, nothing in the record shows that plaintiff was seriously harmed by missing that appointment, or that jail officials had actual knowledge of and ignored a substantial risk of serious harm to plaintiff if he were to miss the appointment. Plaintiff was examined and treated by jail infirmary staff, and was taken to the hospital for his scheduled reconstructive surgery. Nothing in the record supports plaintiff's conclusory allegation that because he was not returned to the hospital orthopedic clinic on July 31, 2003, he lost his leg to post-surgery complications on September 13, 2003. Plaintiff establishes neither subjective deliberate indifference by jail officials nor an Eighth Amendment violation resulting from a policy or custom adopted or maintained with objective deliberate indifference to inmate medical needs. Plaintiff neither establishes his right to judgment as a matter of law nor raises a genuine of issue of material fact precluding summary judgment in favor of defendant.

11

Under his latter claim, plaintiff asserts that county jail officials delayed by five days his return to LBJ Hospital for post-surgery follow-up in September, and that this delay was due to defendant's policy or custom of delaying inmate medical follow-ups and of ignoring hospital treatment recommendations.  He asserts that because of the delay, his leg became infected and required emergency amputation.

According to the affidavit testimony of N. F. Tsourmas, M.D., submitted by defendant in support of its summary judgment motion, the "dire complication" which plaintiff experienced on September 8, 2003, was not apparent to the jail physician who examined plaintiff on September 5, 2003.  (Docket Entry No. 52, Affidavit of N.F. Tsourmas, M.D.).  Plaintiff presents no probative evidence establishing that jail officials or medical providers were aware of facts from which an inference of an excessive risk to plaintiff could be drawn from their providing post-surgical medical care to plaintiff at the jail infirmary prior to September 8, 2003.  Certainly there is no probative evidence that such an inference was drawn and deliberately ignored.  To the contrary, the medical records clearly show that plaintiff received post-surgical care, examinations, medications, treatment, and monitoring at the jail infirmary.

Conversely, nothing shows that defendant knew plaintiff was in imminent danger of losing his leg prior to September 8, 2003 or that defendant knew and ignored such risk of imminent danger.  Any showing of a failure to alleviate a significant risk that an official should have perceived, but did not, is insufficient to show deliberate indifference.  *Farmer*,

12

511 U.S. at 838.  Plaintiff fails to show that jail officials or medical providers refused to treat him, ignored his complaints, or intentionally treated him incorrectly.  *Id*

Without doubt, the loss of plaintiff's leg is tragic; equally without doubt, however, is that the loss was not due to deliberate indifference.  Plaintiff's complaints of improper treatment sound in negligence, not deliberate indifference.  Because plaintiff fails to met his burden of showing that a jail official acted with subjective deliberate indifference to his Eighth Amendment rights, consideration of defendant's governmental agency liability need not be reached.  *See Flores*, 124 F.3d at 739.  Even assuming such a showing, plaintiff fails to present probative evidence establishing a policy or custom by defendant of ignoring LBJ Hospital treatment recommendations for jail inmates, and that such policy or custom caused the loss of his leg.  Plaintiff neither establishes his right to judgment as a matter of law, nor raises a genuine of issue of material fact precluding summary judgment in favor of defendant.

Similarly, plaintiff's independent Eighth Amendment claim arising from defendant's purported policy or custom of not following hospital treatment recommendations fails for lack of proof.  The Fifth Circuit recognizes an official policy or custom as (1) a written policy or procedure that is officially adopted by and promulgated by the policymaking authorities of a governmental agency, or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well-settled as to constitute a policy or custom that fairly represents the agency's policy.  *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th

Cir. 2001).  Plaintiff presents no probative evidence that it was defendant's written or unwritten policy or custom to ignore the hospital's treatment recommendations for jail inmates.  That jail officials did not follow the hospital's recommendations in the instant case does not establish a policy or custom for purposes of defendant's liability.  Plaintiff neither establishes his right to judgment as a matter of law nor raises a genuine of issue of material fact precluding summary judgment in favor of defendant.  As a result, defendant is entitled to summary judgment dismissing plaintiff's claims.

*Ancillary Disputes*

During the time this case was pending on its second appeal and prior to its administrative closing, plaintiff and defendant exchanged a volley of accusations and denials regarding fraudulent documents, unethical litigation practices, and perjury, culminating in plaintiff's request for disciplinary and criminal action against defendant's attorneys and witnesses.  (Docket Entries No. 71-74.)  The Court has carefully reviewed these accusations and denials, and finds nothing to substantiate plaintiff's assertions that defense counsel withheld documents or submitted fraudulent documents, or that defense witnesses committed perjury.  Relief is not merited on these ancillary disputes.

*Conclusion*

Accordingly, the Court ORDERS as follows:

(1)    Plaintiff's motions to supplement (Docket Entries No. 43, 83, 85) are GRANTED.

14

(2)     Plaintiff's motions for summary judgment (Docket Entries No. 41, 86, 87) are DENIED.

(3)     Defendant's motions for summary judgment (Docket Entry No. 52, 91) are GRANTED.

(4)     Any and all other pending motions or requests for relief are DENIED AS MOOT.

(5)     This case is DISMISSED with prejudice.


The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on June 8, 2007.

_____
Gray H. Miller
United States District Judge